```
15:02:50                    UNITED STATES DISTRICT COURT

              CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

              HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE




UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
              vs.              )
                               )      2:20-CR-418-SB
PATRICIA MOREIRA,              )
                               )
                               )
          Defendant.           )
_____)
                               )
                               )




                    REPORTER'S TRANSCRIPT OF HEARING

                        Los Angeles, California

                    Wednesday, September 18, 2024




              _____

                    AMY DIAZ, RPR, CRR, FCRR
                    Federal Official Reporter
                    350 West 1st Street, #4455
                    Los Angeles, CA 90012


        Please order court transcripts here:  www.amydiazfedreporter.com
```

1    APPEARANCES OF COUNSEL:

2

    For the Plaintiff:

3

4                    Office of the United States Attorney
                     By:  Niall O'Donnell
5                         Assistant United States Attorney
                          Eric Schmale
6                         Assistant United States Attorney
                     United States Courthouse
7                    312 North Spring Street
                     Los Angeles, California 90012
8

9

    For the Defendant:

10

                     THE KUYUMJIAN LAW FIRM
11                        By:  Hagop Kuyumjian, Attorney at Law
                     515 South Flower Street, Suite 1900
12                   Los Angeles, California 90071

13                   THE LAW OFFICES OF MICHAEL A. GOLDSTEIN
                          By:  Michael Goldstein, Attorney at Law
14                   1645 Vine Street, Suite 809
                     Los Angeles, California 90028
15

16

17

18

19

20

21

22

23

24

25

1  15:02:52          THE CLERK:  Calling item number two,

2  15:03:01  CR-20-418-A-MWF, United States of America vs. Patricia Inelia

3  15:03:06  Moreira.

4  15:03:06          Counsel state your appearances for the record.

5  15:03:08          MR. SCHMALE:  Good afternoon, Your Honor.  Eric

6  15:03:10  Schmale on behalf of the Government.

7  15:03:11          THE COURT:  Good afternoon, Mr. Schmale.

8  15:03:14          MR. KUYUMJIAN:  Good afternoon, Your Honor.  Hagop

9  15:03:16  Kuyumjian for Ms. Moreira.

10 15:03:19          MR. GOLDSTEIN:  Good afternoon, Your Honor.  Michael

11 15:03:21  Goldstein, G-o-l-d-s-t-e-i-n, also for Ms. Moreira.

12 15:03:28          THE COURT:  Ms. Moreira, good afternoon.  Good

13 15:03:30  afternoon, counsel.

14 15:03:32          We are here for sentencing.  I have reviewed the

15 15:03:36  revised presentence report and the revised recommendation

16 15:03:40  letter from the probation office, the addendum to the

17 15:03:44  presentence report, the Government's sentencing memorandum,

18 15:03:48  and then the defendant's sentencing memorandum with the three

19 15:03:53  exhibits attached, the proof of the substantial payment of

20 15:03:58  $100,000 toward the even more substantial restitution, Ms.

21 15:04:05  Moreira's academic credentials, and then the letters in

22 15:04:09  support.

23 15:04:10          Does the Government believe that there is -- and

24 15:04:14  then the plea agreement.

25 15:04:15          The Government's motion is granted pursuant to

1    15:04:21    Section 5K1.1.  Certainly, a very substantial departure; in

2    15:04:28    fact, I think the largest departure that I've granted, but I

3    15:04:32    understand from the testimony in regard to Dr. Thropay, why

4    15:04:37    the Government is making that request.

5    15:04:38            Is there anything else that the Government believes

6    15:04:42    that I should have reviewed?

7    15:04:44            MR. SCHMALE:  No, Your Honor.

8    15:04:45            THE COURT:  All right.  And is there anything else

9    15:04:46    that the defense believes that I should have reviewed?

10   15:04:50            MR. KUYUMJIAN:  No, Your Honor, not at this time.

11   15:04:52            THE COURT:  And let me add the plea agreement, as

12   15:04:56    well.

13   15:04:56            Ms. Moreira, did you review the revised presentence

14   15:05:01    report with your lawyers?

15   15:05:03            THE DEFENDANT:  Yes, I did.

16   15:05:04            THE COURT:  All right.  Thank you.

17   15:05:06            The recommended base offense level here after the

18   15:05:12    revision is 6; the loss amount 16 levels; being a government

19   15:05:24    health care program, another upward adjustment of two levels;

20   15:05:27    the role of Ms. Moreira being three levels being an abuse of

21   15:05:34    public or private trust, another two levels; and then an

22   15:05:37    acceptance of responsibility for three levels.

23   15:05:42            With the departure that I previously mentioned, this

24   15:05:47    is an offense level of 19, and a Criminal History Category of

25   15:05:54    I, which results in 30 to 37 months as a recommended

1 15:06:01   Sentencing Guidelines amount, certainly a very substantial

2 15:06:05   reduction from what would otherwise have been a range of 63

3 15:06:10   to 78 months.  Of course, the defense is arguing for

4 15:06:18   something different.

5 15:06:20          So first, does the defense, recognizing that you are

6 15:06:25   going to argue for a very different sentence, is there any

7 15:06:28   objection to the calculations that are in the presentence

8 15:06:31   report?

9 15:06:32          MR. KUYUMJIAN:  Not at this time, Your Honor, other

10 15:06:34   than what we put in the sentencing memo, and obviously

11 15:06:38   pursuant to what we are going to argue.

12 15:06:39          THE COURT:  Correct.  And then the Government has

13 15:06:42   indicated that it agrees with these calculations, correct?

14 15:06:46          MR. SCHMALE:  That's correct, Your Honor.

15 15:06:48          THE COURT:  So the real sentence here, obviously, as

16 15:06:50   it has been with all of the defendants, is what should the

17 15:06:53   real sentence be?

18 15:06:56          There is a number of issues to consider.  On the one

19 15:07:03   hand, there is the seriousness of this conduct, and more

20 15:07:07   broadly, the seriousness of this particular fraud.  You know,

21 15:07:19   I think in Glendale there might be more hospices than in the

22 15:07:24   entire state of New York, so it's -- it's definitely

23 15:07:28   something which is recognized as being a real problem.

24 15:07:31          On the other hand, there are those issues, which the

25 15:07:36   defense argues should be seen reasons for leniency, the

affect on Ms. Moreira's family, the putative aberrant

conduct, and making the early restitution.

And then there is also an issue which matters, but

can only matter so much, and that is what other defendants

received.  All defendants are in, you know, have to be looked

at as their own persons.  Certainly, no one would want it to

be any other way.

And here, for instance, Dr. Thropay, despite going

to trial, and despite being a medical doctor, did receive

some leniency; those include for his age and the

extraordinary public good he did before being involved in

this fraud.

Those are matters that are unique to him.  Though,

of course, Ms. Moreira is not that much younger than Dr.

Thropay.

On the other hand, you know, a child on a

kindergarten playground has a gut sense that justice should

mean that like is treated alike; and I therefore don't intend

to ignore the other -- what has happened to the other

defendants, including Dr. Thropay.  And then of course, in

particular, including Mr. Karkotsyan, who could be seen as

the defendant who is most analogous to Ms. Moreira.

But again, all those things, while favoring

leniency, the question is how much?  Because what we have

here is a very serious fraud in which really Ms. Moreira and

1 15:09:32    Mr. Karkotsyan were at the center of it more than Dr.

2 15:09:38    Thropay.

3 15:09:38            And that, therefore, the issue becomes, after giving

4 15:09:44    this extraordinary credit for this very substantial

5 15:09:49    cooperation, what would a just sentence be?  That is what has

6 15:09:54    to be determined here.

7 15:09:55            So with those remarks, let me hear from the defense,

8 15:10:02    I'll hear from the Government, the defense will have the

9 15:10:05    opportunity to respond, and then I'll hear from Ms. Moreira

10 15:10:09    directly.

11 15:10:11            MR. KUYUMJIAN:  Thank you so much, Your Honor.

12 15:10:15            And, Your Honor, I'll start out by addressing the

13 15:10:19    seriousness of the conduct.

14 15:10:21            There is no doubt in any of our minds that Ms.

15 15:10:25    Moreira's conduct in this case is very serious.  She betrayed

16 15:10:29    the trust of her patients.  She had a professional license,

17 15:10:32    she was a nurse, and she used her license in a way that

18 15:10:38    obviously is against the law, and is an abuse of the trust

19 15:10:42    that she had established for being a nurse.

20 15:10:45            She tried to become a nurse at a young age, and she

21 15:10:50    ultimately reached that goal when she was a resident of

22 15:10:56    Chile.  And she went into that field because she wanted to

23 15:11:00    use her services and her talents to help other people, and to

24 15:11:05    help those who are in need, and provide health care services.

25 15:11:12    And she recognizes that she totally went against all those

ideals, all the things that she was taught, and all the
things that she was -- was standing up for, for so much of
her life.

But that ultimately, although this was serious, we
shouldn't forget that she did have many, many years of
service, and good service to the community.  She -- that
started when she was a young woman in Chile.  That continued
once she moved to this country, and really had an outstanding
professional record until the fraud in this case started.

And to her credit, Your Honor, she never shied away
from it.  She understood that this was serious conduct, and
she started cooperating with the Government and really
accepting responsibility even before the indictment happened.
And she continued to cooperate and expressed a desire to
plead guilty after the indictment.

So she is really very remorseful, and totally
understands that what she did was wrong, that she went
against all of her professional teachings, all of what is
right in society; and on top of that, she went against --
really, she came to this country with her family in search of
opportunity, in search of a better life, and in search of
giving her children a positive experience, and she totally
went against the ideals of this country by doing what she
did.  So she totally understands that.

But that being said, Your Honor, and as the Court

15:13:03  1  mentioned, Ms. Moreira is an elderly woman.  She's 68 years

15:13:09  2  old as she's sitting there today, and she suffers from

15:13:14  3  various health problems.  She's got cysts in her lungs, she's

15:13:20  4  got anxiety, she's got depression, and even the PSR, the

15:13:23  5  latest PSR recommendation letter, recognizes that these

15:13:26  6  conditions would be exacerbated by imprisonment.

15:13:31  7       And that is why we are asking for probation.

15:13:34  8  Because when you look at all of the whole circle of events

15:13:41  9  surrounding Ms. Moreira, you look at the seriousness of the

15:13:44 10  crime, you look at what the other defendants got -- and

15:13:49 11  obviously, as the Court recognized, we can't only look at

15:13:53 12  what the other defendants got, but it is something that

15:13:56 13  should be considered.  And you look at her conduct, specific

15:13:59 14  conduct, you look at her cooperation, she's been cooperating

15:14:02 15  for several years since really before, like I said, before

15:14:06 16  the charges were filed.

15:14:09 17       She met with the Government over 10 times for

15:14:11 18  several hours.  She provided many, many documents to the

15:14:16 19  Government that I don't believe that they had previously.

15:14:18 20  She testified at trial for Mr. -- at Dr. Thropay's trial for

15:14:24 21  the Government.  And she, my understanding, was the only one

15:14:27 22  of the defendants that testified for the Government at trial.

15:14:30 23       And all of that is a significant illustration on Ms.

15:14:36 24  Moreira's part that she wants to rectify the wrongs that she

15:14:43 25  committed in this case.  She wants to show the Court, and she

wants to show the Government that she shouldn't be defined by

the mistakes and the total side path that she took in this

case.  And she should be looked at as an individual who is

trying to rehabilitate, who is trying to make things right,

and she's trying to rectify all the things that she did.

        And another way that she's illustrated that, and as

the Court mentioned, is she's the only defendant that I'm

aware of that made any restitution payment in this case.  She

made a $100,000 restitution payment, which is significant;

obviously, is not the whole thing, because we know that the

restitution in this case is over $1 million, and it's a very

large number, but $100,000, in order for her to make that

restitution payment -- and I think the Court's aware of this

because of the motions that we had to file -- she had to

refinance her home.  And she took great financial burden on

herself and on her family in order to do that.

        And the reason why she did that was because this was

a financial crime, the victim in the case was financially

harmed, and she understood that in order to show that she's

remorseful, and that she is apologetic, and she's really

embarrassed and ashamed by what she's done, she needs to take

a significant step to show that she really means business,

and she's just not giving lip service to this kind of

apologetic feelings that she has.  So she took the step of

paying $100,000.  And she recognizes that she's going to owe

a lot more.  And she wants the Court to know, and she wants

the Government to know, that she's going to do everything

that she can to make right on that, because she knows that

that is the crux of the damage that was done in this case.

        The other damage that was done in this case, and she

recognizes, is that she had patients who were harmed because

these patients were getting kind of services that they didn't

need, and they were not able to get other services that they

may have needed.  And she recognizes that is a significant

issue, because she is a nurse, and she went into nursing for

patient care.  She went into nursing for patient care, and

she totally went against all those ideals and all the oaths,

and all the requirements that -- all the professional

requirements that she had to stand by, by doing that.

        But that gets me to the deterrent aspect of this

case, Your Honor.  And I know the Government mentioned this

in their sentencing brief, they mentioned that the custodial

sentence is required partly because of deterrence.  And I

would submit that somebody in Ms. Moreira's position doesn't

need a substantial prison sentence for a deterrent measure,

because she's a woman who had a professional license.  That

is all but gone at this point.  She's now financially in a

very different position than she was previously.  And her

family is in a totally different position.  And she's also

suffered very public humiliation, embarrassment and shame.

1 15:18:06   And she's really in a totally different position than she was

2 15:18:11   before.

3 15:18:11         And when you look at people that commit these kind

4 15:18:15   of offenses, professionals or white collar offenses of this

5 15:18:21   nature, that involve professional licenses, generally people

6 15:18:26   that are doing this stuff are not doing it for any reason,

7 15:18:31   other than they are trying to make money.  And they are also,

8 15:18:35   in a way, trying to increase their professional notoriety,

9 15:18:38   and their professional respect, because they are trying to

10 15:18:42   increase their kind of foothold in the community with the job

11 15:18:46   that they are doing.  And all of that was taken away.

12 15:18:49         So if anybody that is a nurse or a professional with

13 15:18:54   a license that is thinking about committing this kind of

14 15:18:57   health care fraud, and they see that the outcome of it was

15 15:19:01   that the money was taken, and that the license was taken,

16 15:19:05   that is, I would submit, enough for even someone to say, oh,

17 15:19:09   I don't want to get into this anymore, because the risk is

18 15:19:12   just too high, because somebody that goes to school and has

19 15:19:15   to go into extensive education, and has to expend all these

20 15:19:19   resources to get to a professional level, and then kind of go

21 15:19:24   sideways like this, and then gets their license taken away,

22 15:19:27   and then has a huge financial penalty, and then on top of

23 15:19:31   that, has the public kind of notice that they committed these

24 15:19:37   kind of offenses, I would submit that that is enough for

25 15:19:40   deterrence, and that a custody sentence is not required.

1  15:19:44          The other thing that I wanted to mention was that,

2  15:19:50    as the Court had mentioned, that Mr. Karkotsyan is an

3  15:19:55    analogous defendant to Ms. Moreira, and I would agree with

4  15:19:59    that, Your Honor, in some ways.  And in other ways, I don't

5  15:20:02    know if I -- I don't think I agree with it.  And I agree with

6  15:20:05    it in the sense that Mr. Karkotsyan and Ms. Moreira were

7  15:20:09    partners in this enterprise.  They started this enterprise

8  15:20:12    together.  They were the owners of the company.  They were

9  15:20:15    the owners of Blue Sky, and they kind of were the captains of

10 15:20:19    the ship, so to speak.

11 15:20:20          But the difference is significant, in that although

12 15:20:26    Mr. Karkotsyan cooperated with the Government, I don't

13 15:20:30    believe it was as substantial as the cooperation that Ms.

14 15:20:34    Moreira provided.  I think Ms. Moreira over the three-year

15 15:20:36    period, we met with the Government several times.  I was

16 15:20:39    there at some of the meetings, Mr. Goldstein was there at the

17 15:20:42    other meetings, and Ms. Moreira was always there.  She was

18 15:20:46    willing to talk to them whenever they needed.  She provided

19 15:20:50    documents.  She answered all of the questions, and really

20 15:20:53    made herself available.  And she was -- she tried to make

21 15:20:57    herself as open of a book as possible.

22 15:21:00          And I recognize that the Government understands

23 15:21:03    that, and they say that in their papers, but I think that her

24 15:21:09    really significant cooperation puts her in a different

25 15:21:11    category than Mr. Karkotsyan.

1  15:21:14      The other thing that Mr. Karkotsyan did not do was

2  15:21:18  pay restitution like Ms. Moreira did.  She -- and I -- as I

3  15:21:23  mentioned before, she took a significant step, and these

4  15:21:28  times are very tough for her and her family.  It was not an

5  15:21:32  easy thing for her to do, but she did that because she wanted

6  15:21:36  the Court and the Government to know how serious she was, and

7  15:21:40  how remorseful she was.

8  15:21:41      Then I will just also compare her to Dr. Thropay.

9  15:21:47  And as the Court mentioned, Dr. Thropay is up there in age,

10 15:21:53  although he's older than Ms. Moreira, he's not so much

11 15:21:56  younger than she is, and she's also suffering from various

12 15:21:59  health conditions.  And the health conditions that she

13 15:22:02  suffers from I think kind of exacerbates the dangerousness of

14 15:22:11  a prison sentence for her.

15 15:22:13      She's 68 years old.  She's got cysts in her lungs,

16 15:22:17  she needs further testing on those; and then on top of that,

17 15:22:20  she's got mental health issues, the depression and the

18 15:22:22  anxiety.  And who knows what could happen if she goes into

19 15:22:27  prison and she suffers a significant health scare or an

20 15:22:32  age-related issue.  Obviously, the prisons have health care

21 15:22:36  facilities, and things like that, but who knows what could

22 15:22:39  happen.  It would be a dangerous circumstance that she would

23 15:22:42  be faced with.

24 15:22:43      And when you put all that together, you have Dr.

25 15:22:48  Thropay and Mr. Karkotsyan getting 37 months each, and the

recommended sentence of 30 months for Ms. Moreira, while it's

lower, I don't think it's low enough to take into account all

the things that I mentioned.

And that is why we believe that a probationary

sentence is what would be fair in this case. The conviction,

the loss of the professional license, the restitution, and

any other conditions that the Court would impose, I think

would take care of the deterrent issue. I think it would be

an equal sentence in terms of other defendants got probation,

and then it would be the differences with Ms. Moreira and

Mr. Karkotsyan and Dr. Thropay are significant enough that it

could be justified. And I think that when you look at the

whole picture, I think that is what is fair in this case.

Alternatively, if the Court wants to go a different

route, I would submit that a year and a day with electronic

monitoring or home confinement, or whatever variance that the

Court wishes, I think that would also be fair. Because that

would allow Ms. Moreira to obviously be punished, she would

get some kind of custodial punishment, but she would be in

the safety of her home. If she has a health scare, she could

handle it.

And she's not the type of person that would disobey

the Court's order. The Court could impose whatever

conditions it wants on her. She's shown to the Court and to

the Government that she's more than capable of complying with

1 15:24:32    orders.

2 15:24:33         She hasn't had any issues that I'm aware of over the

3 15:24:36    period of time that she has been out.  She's complied with

4 15:24:39    all pretrial orders.  She's met with Probation as required.

5 15:24:43    She's submitted her passport and all the other documents that

6 15:24:46    she needed to do at the onset of the case.

7 15:24:48         And I think when you put all of this together, I

8 15:24:51    think one of those ways I think would be the fairest outcome

9 15:24:56    here, because it would be a fair sentence in relation to the

10 15:24:59    case, and other cases in this area, it would take into

11 15:25:03    account her personal needs, it would take into account the

12 15:25:05    needs of society, and it would take into account the

13 15:25:10    sentences that the other defendants got.

14 15:25:12         So with that, I would submit at this point, with

15 15:25:16    rebuttal based on what the Government says, Your Honor.

16 15:25:18         THE COURT:  Thank you, counsel.

17 15:25:19         Let me hear from the Government.

18 15:25:21         MR. SCHMALE:  Thank you, Your Honor.

19 15:25:22         I will be brief, in no small part because I think

20 15:25:28    Your Honor laid out the relevant considerations, and kind of

21 15:25:31    everything that has to be considered to balance and reach an

22 15:25:34    appropriate sentence.

23 15:25:35         I believe the Government did that in arriving at the

24 15:25:38    30-month sentencing recommendation, which as Your Honor noted

25 15:25:42    includes a generous credit for the cooperation the defendant

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

| | |
|---|---|
| 1 15:25:47 | provided in testifying at trial, and substantially more |
| 2 15:25:51 | generous than was provided to her similarly-situated |
| 3 15:25:55 | codefendant. |
| 4 15:25:55 | THE COURT:  As we mentioned, also it started early, |
| 5 15:25:58 | there were the documents and there was meetings -- there were |
| 6 15:26:02 | meeting that many times and for that long a time, and having |
| 7 15:26:04 | been both a prosecutor and a defense attorney, as well now as |
| 8 15:26:08 | a judge, that itself is something that should be recognized, |
| 9 15:26:12 | as well as the testimony at trial. |
| 10 15:26:14 | MR. SCHMALE:  Absolutely, Your Honor.  Thank you. |
| 11 15:26:16 | So, yes, so the Government believes that that |
| 12 15:26:21 | 30-month sentence accounts for that additional cooperation. |
| 13 15:26:26 | But kind of responding to some of the points made by |
| 14 15:26:30 | defense counsel, speaking to deterrence, this is a very |
| 15 15:26:34 | serious crime, and it's very pervasive.  It is very hard to |
| 16 15:26:40 | prosecute, because it is very resource intensive to prosecute |
| 17 15:26:44 | these cases.  And the deterrence the Government is largely |
| 18 15:26:47 | speaking to is general deterrence; not necessarily specific |
| 19 15:26:51 | deterrence for this specific defendant. |
| 20 15:26:53 | And defense counsel argues that, you know, losing |
| 21 15:26:56 | the license and having to give money back is sufficient.  I |
| 22 15:27:00 | just don't think that is true if 100 people are doing this |
| 23 15:27:03 | and one gets caught, and the punishment is you have to give |
| 24 15:27:05 | back your license and the money, I don't think the other 99 |
| 25 15:27:07 | are out there thinking, well, gee, I better be extremely |

1 15:27:11  careful, because look at those harsh consequences.  So I

2 15:27:14  think there needs to be more than that.

3 15:27:18       In terms of some arguments in defense counsel's

4 15:27:24  brief, they talk about family circumstances, aberrant

5 15:27:28  behavior and mental and emotional conditions as reasons for

6 15:27:31  departures.  I don't think any of those are merited on the

7 15:27:35  facts.  There is nothing highly specific about the family

8 15:27:38  circumstances and her husband's health problems.

9 15:27:41       I do not believe aberrant behavior applies, because

10 15:27:44  this took significant planning and was over a significant

11 15:27:48  period of time, and the mental and emotional conditions

12 15:27:51  referenced do not appear to be serious enough to qualify for

13 15:27:56  a significant change in the sentence.

14 15:28:00       So I think we are left with, as Your Honor has hit

15 15:28:03  on, a largely comparative exercise between the other

16 15:28:07  defendants in this case, with Karkotsyan being the most

17 15:28:11  comparable.  He provided less cooperation in terms of the

18 15:28:17  critical thing is not testifying at trial, and not being able

19 15:28:21  to provide the useful testimony that was provided.

20 15:28:28       So I think starting with his sentence as a kind of a

21 15:28:32  starting point, and looking downward from there is fair,

22 15:28:34  which is, again, I think the Government's 30-month sentence

23 15:28:39  does that.

24 15:28:40       And I would note that I believe Defendant Karkotsyan

25 15:28:43  did also make a restitution payment prior to sentencing.  So

I don't think that is a basis to distinguish some, I believe
his restitution payment, I don't have the exact figure in
front of me, but I believe it was also in the hundreds of
thousands of dollars.

THE COURT:  It was.  But also, it was not paid at
the time of sentencing.  So obviously, I took it as a sign of
good intentions, but it's not the same as actually having
delivered it to the Clerk's Office.  So it's -- that is
definitely a distinction between Ms. Moreira and
Mr. Karkotsyan.

MR. SCHMALE:  Okay.  I thought it had been paid at
the time of sentencing, but perhaps I was wrong on that
point.

And then in terms of continuing this comparative
exercise, Dr. Thropay received a 37-month sentence, as well.
That is, obviously, substantially below what the Government
asked for.  But I still think that is reconcilable with a
30-month sentence, in part because the 30-month sentence is
lower than 37 months.  And owning and operating the hospice,
not withstanding the fact that Dr. Thropay was the doctor and
the defendant here was a nurse, owning and operating the
hospice is a more serious role.  That is why it resulted in
the leader/organizer enhancement here.

And so I think those, a 37-month sentence for Dr.
Thropay, and a 30-month sentencing can be reconciled here,

15:30:17  even if the gap is perhaps not as large as if the Government

15:30:20  had received the sentences it had asked for.

15:30:24      So I think those are the key points I wanted to hit

15:30:29  on, Your Honor.  If there is anything else Your Honor has

15:30:33  questions about, I'm happy to respond.

15:30:35      THE COURT:  Thank you.

15:30:37      Counsel, would you like to say anything in response?

15:30:40      MR. KUYUMJIAN:  Yes, Your Honor.

15:30:43      Thank you, Your Honor.

15:30:47      And I recognize the Government's arguments, and

15:30:51  obviously we are very grateful to the Government for making

15:30:54  the reduction argument that they did.  That is not lost upon

15:30:57  us.  But we also believe that a greater reduction is

15:31:01  necessary.

15:31:03      And I'll just go to Mr. Karkotsyan for a second,

15:31:06  Your Honor.  He's significantly younger than Ms. Moreira.  I

15:31:11  don't believe that -- I think he might be even 20 years

15:31:14  younger than Ms. Moreira.  I don't remember the exact math at

15:31:19  this point, but he's 20 years younger, he's far more equipped

15:31:23  to handle a custodial sentence than somebody that is Ms.

15:31:28  Moreira's age, in my opinion.

15:31:30      In addition to that, I won't belabor this, but the

15:31:37  cooperation just I don't believe was at the same level.

15:31:40      The other thing that I'll say, although Ms. Moreira

15:31:44  was the owner of the -- or one of the owners of the company,

and we recognize that, and she understands that, when you

compare it to Dr. Thropay, and obviously he doesn't get the

organizer enhancement, but he's also a medical doctor.  And

this -- he was an integral part in the whole scheme, because

it wouldn't have worked without a medical doctor.

So as he needed to sign off on the bills or the

charts to get the patients into hospice and certify them for

hospice, so he was an integral element that made the whole

scheme go.

So I would say that that is -- he's also a

significant participant in it.  And in addition to being a

significant participant, unlike Ms. Moreira, and unlike

Mr. Karkotsyan, he didn't cooperate at all.  He really fought

this thing to the bitter end.  And even, from what I

understand, didn't display any kind of remorse even at his

sentencing hearing.

And I recognize that he was a medical doctor, and he

may have done a lot of positive things prior to this, but

that is a significant difference than Ms. Moreira, because

Ms. Moreira obviously did a lot of positive things before

this.

And she did take responsibility in this case, Your

Honor, and she continues to take responsibility.  And I don't

think it can be forgotten just the health risks that she

takes, or that she has at this point.

1 15:33:22          The other thing that I would say, Your Honor, and

2 15:33:25    I'll just respond to the Government's claim about general

3 15:33:27    deterrence, I don't agree that other individuals would be

4 15:33:35    deterred from doing this if they see a sentence that is

5 15:33:39    probation or a year and a day, because when people do this,

6 15:33:44    their main goal is financial.  They are trying to enrich

7 15:33:48    themselves.  They are trying to become financially benefited

8 15:33:53    from this enterprise.  And if they see that the defendants

9 15:33:57    are getting convicted and all the money is being taken away,

10 15:34:01    and they are going to have to hire counsel or deal with legal

11 15:34:04    repercussions for many years, and significant court

12 15:34:09    intervention, and court, like, eyes on them, that is -- that

13 15:34:15    is enough for a lot of people not to do this, because they do

14 15:34:19    it to remain under the radar, they do it to make money, and

15 15:34:22    they do it to enrich themselves.

16 15:34:26          And if all of that gets taken away, and not only

17 15:34:28    does it get taken away, but they are not able to live a free

18 15:34:35    life even if they are outside of the prison system, I think

19 15:34:39    that is enough for general deterrence.

20 15:34:41          And there is cases that we cited in our sentencing

21 15:34:45    brief that basically say in white collar offenses,

22 15:34:48    probationary sentences are significant for deterrence, as

23 15:34:51    well.  So I think the general deterrent factor of a

24 15:34:57    probationary sentence cannot be understated.

25 15:34:59          The other thing that I would say is that Ms. Moreira

15:35:06   is -- she hadn't done anything like this before.  She was

15:35:12   living a law abiding life for her entire life, and then this

15:35:17   was a blip on the radar for her.

15:35:22           And she does not intend to do anything like this

15:35:24   ever again.  She does not want to be in this position ever

15:35:27   again.  And she does not want to put her family through this

15:35:31   ever again.  And all she wants to do is move on, show the

15:35:34   Court and the Government that she's apologetic, and

15:35:37   understanding of the mistakes that she made, and try to pick

15:35:42   up the pieces of her life.

15:35:44           So with that, Your Honor, I would submit, unless the

15:35:48   Court has questions that it would want me to respond to.

15:35:51           THE COURT:  No, I do not.  Thank you, counsel.  I

15:35:54   think you have responded to what the Government had to say.

15:35:57           Ms. Moreira, what would you like to say to me?

15:36:00           THE DEFENDANT:  Your Honor, I know this is the first

15:36:18   and only opportunity that I have to address the Court.  I

15:36:23   would like to express my sincere remorse and apologies for my

15:36:29   conduct with Blue Sky Hospice.  I express my complete and

15:36:34   unconditional repentance for my acts which affect others.

15:36:39           I also want to thank the Government for their trust

15:36:45   and for the opportunity to cooperate and to provide

15:36:48   assistance.

15:36:49           I have disappointed my husband, my children, my

15:36:55   friends and my colleagues in the nursing community.  As a

young girl in Chile, I dream of becoming a nurse to help

others.  My parents work so hard to make sure I had access to

a good education.  I attended a reputable university and

medical school, and worked hard to obtain my degree in

nursing licensing.  I start my career as a nurse in Chile,

where I spent 10 years as a pediatric and public health

nurse.  I then work as a nurse for over a decade in the

United States before engaging in this conduct, and destroying

a stellar career and going against my duties of patient care.

        All of that is now in jeopardy because of my own

conduct.  My dreams have essentially become a nightmare.  I

want you to know that I did my best to assist the Government

against other defendants.  To testify in a trial was

terrifying me, and I worry about the long-term impact this

may have on our family.

        I did this to show my remorse, and to send a message

to the Government and this Honorable Court that I have taken

this seriously regardless of the potential dangers to my

family.

        We also refinance my home to have a significant

payment toward the losses.

        Regardless of what I have done here, I respect the

law and ideals of the United States.  As an immigrant, this

country has afforded opportunities to our family that we

could have never imagined possible.  I'm proud that my

15:38:56  younger brother has three childrens, currently serving as an

15:39:04  officer in the United States Navy.

15:39:05        Through my conduct, I abused the country that has

15:39:09  given me so much, and it has been my home for 33 years.  My

15:39:15  husband and I love this country.  And I -- it hurts me to

15:39:22  stand here before you.

15:39:24        I will forever regret my mistake committed for which

15:39:29  I assume my responsibilities and consequences with the

15:39:34  promise and my word never to commit an offense for the rest

15:39:39  of my life.

15:39:41        I stand here before you and ask for your mercy as

15:39:47  you impose sentence.  I'm so sorry for what I have done.  I

15:39:53  have to be strong for my husband and children.

15:39:58        I'm humbly and respectfully asking you to consider

15:40:05  allowing me to continue to take care of them at home.  They

15:40:08  are all I have left.

15:40:11        Your Honor, thank you for this opportunity to be

15:40:13  heard.

15:40:14        THE COURT:  Thank you, Ms. Moreira.

15:40:17        Counsel, is there any legal cause why sentence

15:40:21  should not now be imposed?

15:40:23        MR. KUYUMJIAN:  No, Your Honor.  Thank you.

15:40:25        MR. SCHMALE:  No, Your Honor.

15:40:25        MR. GOLDSTEIN:  No, Your Honor.

15:40:27        THE COURT:  The Court has considered the sentencing

factors at Title 18 United States Code Section 3553(a),

including an advisory range of 30 to 37 months based on an

offense level of 19 and a Criminal History Category of Roman

Numeral I following the grant of the Government's motion

pursuant to Section 5K1.1.

The Court now sentences as follows:

It is ordered that the defendant shall pay to the

United States a special assessment of $100, which is due

immediately.  Any unpaid balance shall be due during the

period of imprisonment at the rate of not less than $25 per

quarter and pursuant to the Inmate Financial Responsibility

Program of the Bureau of Prisons.

It is ordered that the defendant shall pay

restitution in the total amount of $1,665,700 pursuant to

Title 18 United States Code Section 3663(a).  The defendant

shall receive credit for a payment of restitution of

$100,000.

The amount of restitution ordered shall be paid as

follows:

To the Victim Centers for Medicare and Medicaid

Services, commonly known as CMS, in the amount of $1,665,700

with the credit provided.

The Court finds from a consideration of the record

that the defendant's economic circumstances allow for

restitution payments pursuant to the following schedule.  The

balance shall be due during the period of imprisonment at the
rate of not less than $25 per quarter and pursuant to the
Inmate Financial Responsibility Program.

If any amount of the restitution remains unpaid,
monthly payments of at least 10 percent of the gross monthly
income, but not less than $500, whichever is greater, shall
be made during the period of supervised release.  These
payments shall begin 30 days after the commencement of
supervision.

Pursuant to Title 18, United States Code, Section
3612(f)(3)(A), interest on the restitution ordered is waived,
because the defendant does not have the ability to pay
interest.

Payments may be subject to penalties for default and
delinquency pursuant to Title 18, United States Code, Section
3612(g).

The defendant shall be held jointly and severally
liable with coparticipants John Paul Thropay, Raul De Luna
Sison, and Arutyan Karkotsyan for the amount of restitution
ordered in this judgment.

The victim's recovery is limited to the amount of
its loss, and the defendant's liability for restitution
ceases if and when the victim receives full restitution.

Pursuant to Section 5E1.2(a) of the Sentencing
Guidelines, all fines are waived, as the Court finds that the

1 15:43:23  defendant has established that she is unable to pay, and is

2 15:43:25  not likely to become able to pay any fine in addition to

3 15:43:29  restitution.

4 15:43:30          The defendant shall comply with Second Amended

5 15:43:33  General Order Number 20-04.

6 15:43:36          Pursuant to the Sentencing Reform Act of 1984, it is

7 15:43:39  the judgment of the Court that the defendant, Patricia Inelia

8 15:43:43  Moreira, is hereby committed on Count 11 of the First

9 15:43:46  Superseding Indictment to the custody of the Bureau of

10 15:43:48  Prisons for a term of 18 months.

11 15:43:51          Upon release from imprisonment, the defendant shall

12 15:43:53  be placed on supervised release for a term of three years

13 15:43:57  under the following terms and conditions.  The Court will now

14 15:44:01  read seven conditions.

15 15:44:03          1.  The defendant shall comply with the rules and

16 15:44:06  regulations of the United States Probation and Pretrial

17 15:44:09  Services Office, and Second Amended General Order 20-04,

18 15:44:14  including the conditions of probation and supervised release

19 15:44:17  set forth in Section 3 of Second Amended General Order 20-04.

20 15:44:22          2.  During the period of community supervision, the

21 15:44:25  defendant shall pay the special assessment and restitution in

22 15:44:29  accordance with the orders of this judgment pertaining to

23 15:44:31  such payment.

24 15:44:32          3.  The defendant shall cooperate in the collection

25 15:44:35  of a DNA sample from the defendant.

4.    The defendant shall apply all monies received
from income tax refunds, lottery winnings, inheritance,
judgments, and any other financial gains to the court-ordered
financial obligation.

5.    The defendant shall provide the probation
officer with access to any and all business records, client
lists, and other records pertaining to the operation of any
business owned, in whole or in part, by the defendant as
directed by her probation officer.

6.    The defendant shall not engage as whole or
partial owner, employee or otherwise, in any business or
profession that bills Medicare or any other publically-funded
health care benefit program without the express written
approval of the probation officer prior to engaging in any
such employment, business or profession.  And;

7.    The defendant shall submit the defendant's
person, property, house, residence, vehicle, papers, or other
areas under the defendant's control to a search conducted by
a United States probation officer or law enforcement officer.

Failure to submit to a search may be grounds for
revocation.  The defendant shall warn any other occupants
that the premises may be subject to searches pursuant to this
condition.

Any search pursuant to this condition shall be
conducted at a reasonable time and in a reasonable manner,

upon reasonable suspicion that the defendant has violated a

condition of her supervision, and that the areas to be

searched contain evidence of this violation.

        The defendant -- the Court, rather, recommends to

the Bureau of Prisons that it conduct a mental health

evaluation of the defendant and provide all necessary

treatment.

        The Court authorizes the probation officer to

disclose the presentence report and any previous mental

health evaluations or reports to the treatment provider.  The

treatment provider may provide information, excluding the

presentence report, to state or local social service

agencies, such as the Department of Social Service of the

State of California for the purpose of the defendant's

rehabilitation.

        The drug testing condition mandated by statute is

suspended based on the Court's determination that the

defendant poses a low risk of future substance abuse.

        Ms. Moreira, the law requires me to mouth the

following words, which is that you have a right to appeal

this sentence.  You exercise that right by filing a Notice of

Appeal here in the District Court.  That removes the case to

the Court of Appeals.

        If your lawyers refused to assist you, then you

could contact my courtroom deputy, Ms. Jessica Cortes, or

1  15:47:22    Rita Sanchez, and/or the Clerk's Office, you could send them

2  15:47:26    a note, and the Notice of Appeal would be prepared and filed

3  15:47:30    on your behalf.  The deadline for filing the Notice of Appeal

4  15:47:34    is 14 days from today's date.

5  15:47:37         Actually, you don't have that right, because this

6  15:47:40    sentence is lenient enough that it falls within the waiver of

7  15:47:44    your appellate rights that was previously made.

8  15:47:49         Why am I imposing this sentence?  I agree with both

9  15:47:56    sides to a point.  I do think that there is a basis for

10 15:48:02    additional leniency here beyond the seven levels for the

11 15:48:06    cooperation.

12 15:48:09         One reason counsel argued is that the severity of

13 15:48:15    the sentence arises in part from the Sentencing Guidelines,

14 15:48:21    but at some point the loss amount, that it's a government

15 15:48:25    program, the role of the defendant, the abuse of public

16 15:48:29    trust, all of these things go together.

17 15:48:31         There is a certain element of double counting here.

18 15:48:34    It was -- yes, there is an abuse for being a nurse, but then

19 15:48:38    that also allowed the role; and moreover, it was a government

20 15:48:42    health care program, but that is precisely why the amount is

21 15:48:46    as large as it is, and the amount as substantial as it is, is

22 15:48:51    still not near at the high end of this range under the

23 15:48:55    Sentencing Guidelines.  That is a basis for leniency.

24 15:49:00         The fact, not only of the defendant's extensive

25 15:49:04    cooperation, but how early it occurred, as indicative of

1 15:49:11    exceptional remorse, is also a factor.

2 15:49:14        Certainly as a matter of the Guidelines being, this

3 15:49:19    is not aberrant conduct; however, the thoughts behind that

4 15:49:24    certainly contribute to this.  It is clear that Ms. Moreira

5 15:49:28    started her nursing career, as I'm sure all nurses,

6 15:49:32    registered nurses do, in the expectation for helping those

7 15:49:36    who need it.

8 15:49:37        And of course, the effect on her family is, will be

9 15:49:43    severe, I recognize that.

10 15:49:45        The fact of her age, and her own health condition

11 15:49:49    is, again, a factor that should be considered, just as it was

12 15:49:54    in the sentencing of Dr. Thropay.

13 15:49:57        However, that -- some of these things are just the

14 15:50:02    inevitable and foreseeable consequences of the crime itself.

15 15:50:07    And at some point, the crime itself is so serious, especially

16 15:50:14    even though they aren't listed as the financial victims, the

17 15:50:18    effect that this had on the individual patients is simply

18 15:50:21    something that cannot be ignored.

19 15:50:23        I -- oh, let me say another thing of leniency, of

20 15:50:28    course, is the prepayment of the $100,000.  Probation thought

21 15:50:32    $10,000 would be appropriate.  The defendant has come up with

22 15:50:34    considerably more than that.  I'm sure she's correct that

23 15:50:38    doing so is a hardship to her family.

24 15:50:41        However, as I was saying, this is just such a

25 15:50:45    serious crime that while there is no need for specific

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

15:50:49 deterrence, I'm sure Ms. Moreira will never do anything to

15:50:54 break the law again, there has to be some recognition of just

15:51:00 the severity of this crime, a probationary sentence is simply

15:51:06 not enough for that.

15:51:08         The fact that other defendants received probation,

15:51:11 completely different circumstances.  The Government itself on

15:51:15 at least one instance recommended that, as well.  So here, it

15:51:22 can't determine the sentence for the reasons that we've all

15:51:24 said, but kind of a crosscheck on the appropriateness of this

15:51:30 sentence is the sentences that were given to others, that

15:51:36 here you have the partner in the enterprise.  There are

15:51:41 reasons that Ms. Moreira deserves a lenient sentence compared

15:51:46 to Mr. Karkotsyan, but that can only go so far.

15:51:52         There are many reasons she deserves a more lenient

15:51:55 sentence than Dr. Thropay, but part of that is reflected in

15:51:59 both the downward adjustment for her acceptance of

15:52:02 responsibility, and as well, the very generous leniency that

15:52:10 was reflected in the Government's motion.

15:52:13         So as I said, I have considered the sentences that

15:52:17 were given to others, but those alone would not justify a

15:52:23 sentence of probation.

15:52:25         Counsel, what is the recommendation on an

15:52:32 appropriate time to surrender?

15:52:36         MR. KUYUMJIAN:  Your Honor, we were going to ask for

15:52:38 four months, if that was -- if that is okay with the Court.

1 15:52:41          THE COURT:  It's -- I'll grant that.  It's slightly

2 15:52:45    more than what I usually give, which is 10 weeks, but I know

3 15:52:51    that Ms. Moreira and her family are going to have a lot of

4 15:52:54    planning to do.  So I will go ahead and do that.

5 15:52:57          So from here, we've got -- so I will -- I will

6 15:53:07    direct the defendant to surrender to the designated

7 15:53:11    institution on or before Friday, January 10th at 12:00 noon.

8 15:53:17    If no institution has been designated, then to the Office of

9 15:53:20    the United States Marshal on the third floor of this

10 15:53:24   courthouse.

11 15:53:25         MR. KUYUMJIAN:  And, Your Honor, just to be clear,

12 15:53:29   the Court is, I understand, not considering electronic

13 15:53:32   monitoring?

14 15:53:33         THE COURT:  I am not.

15 15:53:34         MR. KUYUMJIAN:  Okay.  But would the Court consider

16 15:53:36   recommending Ms. Moreira for a minimum security satellite

17 15:53:40   camp in California?

18 15:53:40         THE COURT:  I will do so.  Generally, the --

19 15:53:48   generally, the Bureau of Prisons determines the appropriate

20 15:53:54   level; however, I can certainly designate -- I can certainly

21 15:53:59   recommend a geographic designation; and also, I can recommend

22 15:54:02   a specific facility.  But here, I will do as you suggest, and

23 15:54:10   recommend a facility in California which is a minimum

24 15:54:15   security facility.

25 15:54:16         As to that, the Bureau of Prisons will have to

15:54:21  determine that that is an appropriate level for Ms. Moreira.

15:54:28  So they -- they may or may not accept that recommendation.

15:54:33  It would be exceedingly unlikely that they would not accept

15:54:35  the recommendation for a designation in California.

15:54:40          Anything else on behalf of Ms. Moreira?

15:54:44          MR. KUYUMJIAN:  No, Your Honor.

15:54:45          MR. GOLDSTEIN:  No, Your Honor.  Thank you.

15:54:48          MR. SCHMALE:  With regards to restitution, I heard

15:54:51  Your Honor say that it would be joint and several with

15:54:54  regards to the two other defendants in this case.

15:54:56          THE COURT:  I believe I said it was as to three, the

15:55:00  three identified coparticipants, which -- oh, the two in this

15:55:06  sense, but Dr. Thropay, as well, Mr. Sison and

15:55:10  Mr. Karkotsyan.

15:55:11          MR. SCHMALE:  I believe you identify those three,

15:55:13  but there are two other related cases, United States v.

15:55:17  Giologo and United States v. Augustine.

15:55:20          THE COURT:  Correct.  That is exactly right.  And

15:55:22  this arose before.  I will add, then, that the joint and

15:55:26  several comes -- shall be added to all of the coparticipants,

15:55:31  and that includes Soro, Augustine, and Randy Giologo.

15:55:38          MR. SCHMALE:  Giologo and Augustine, those are

15:55:41  different case numbers.

15:55:41          THE COURT:  Correct.  Right.  I have in my notes

15:55:46  here what their sentences were.  I was considering them for

1 15:55:49    the fact that they were the probationary sentences.  I'm

2 15:55:51    aware of those defendants, obviously, and I considered the

3 15:55:53    fact of their sentences in deciding what this sentence should

4 15:55:57    be.

5 15:55:57            MR. SCHMALE:  Also, Your Honor, just in the

6 15:55:59    interests of full disclosure, in the Government's sentencing

7 15:56:02    memo, we had mentioned potential restitution in the amount of

8 15:56:07    $1,529,003, because that is what Judge Blumenfeld ordered for

9 15:56:16    Dr. Thropay.  The 1,665,700 that Your Honor ordered, that

10 15:56:23    represents the full amount billed as part of the scheme.

11 15:56:26    Judge Blumenfeld saw fit to back some numbers out there.

12 15:56:31            THE COURT:  Then let me -- I want -- you know,

13 15:56:34    technically, the Judgment & Commitment Order reflects what

14 15:56:37    was done now, so I want what is done now to be correct.

15 15:56:42            So give me the number from Judge Blumenfeld.

16 15:56:48            MR. SCHMALE:  $1,529,003.

17 15:56:51            THE COURT:  $29,003.  Yes.

18 15:56:55            Where the Court stated the amount of $1,665,700, the

19 15:57:01    Judgment & Commitment Order will reflect the amount of

20 15:57:04    $1,529,003, and then of course the $100,000 will be applied

21 15:57:13    as a credit to that.

22 15:57:15            MR. SCHMALE:  Yes.  Thank you, Your Honor.

23 15:57:16            THE COURT:  Okay.  Anything else from the

24 15:57:19    Government?

25 15:57:20            MR. SCHMALE:  No, Your Honor.  Only to dismiss the

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

15:57:22  1  remaining counts of the Indictment.

15:57:23  2          THE COURT:  The remaining counts of the Indictment

15:57:25  3  are dismissed in the interests of justice.

15:57:29  4          Anything else on behalf of Ms. Moreira?

15:57:33  5          MR. GOLDSTEIN:  No, Your Honor.  Thank you.

15:57:35  6          THE COURT:  Ms. Moreira, good luck to you and your

15:57:37  7  family.

8                      *****     *****     *****

9

10  I certify that the foregoing is a correct transcript from the

11  record of proceedings in the above-titled matter.

12

13

14

15  ---------------------------

16

17  Amy C. Diaz, RPR, CRR              November 21, 2024

18  S/  Amy Diaz

19

20

21

22

23

24

25